Good morning. This is our third case today. It's 4-12-0887, People's State of Illinois v. Michael Brown. Here on behalf of the appellant is Attorney Ryan Wilson, and on behalf of the attorney, Amy Sipes Johnson. Mr. Wilson, are you ready to proceed? May it please the court, counsel. Good morning, your honors. My name is Ryan Wilson, and on behalf of the Office of the State Appellant Defender, I represent the defendant appellant, Michael Brown. Michael Brown was convicted of two counts of first degree murder and one count of aggravated battery with a firearm. His conviction was affirmed by this court on direct appeal, and he filed a petition for post-conviction relief. In that petition, he raised a single claim. He argued that his attorney was ineffective because his attorney gave him wrong advice. That advice being that if he was convicted of both murders, he would be subject to concurrent 20- to 60-year sentences for those two murders. When did his counsel give him that advice? It was after he had been convicted. Yeah, it was a letter that he sent to you. After the issue of whether the second degree should have been given. Correct. I believe that Mr. Brown... What was the advice prior to making the decision whether the second degree should have been given? I believe Mr. Brown said that his attorney gave him that advice at the time that he was contemplating whether to have the court instruct the jury on the second degree instruction. In his petition for post-conviction relief, he has said, I would have asked the court to instruct the jury on second degree murder, but for my attorney's incorrect advice. And the letter that was attached to the petition for post-conviction relief was merely the defendant's evidence that that was something that his counsel did believe. So he actually alleges that he was advised improperly prior to the jury instruction conference. I believe so. I believe that's in his petition. I think it's pretty crucial. You just believe so? Or are you sure that it says that? I'm sure that it says that. Okay. So Mr. Brown has alleged that his attorney advised him incorrectly regarding the appropriate sentencing range. And I believe the state and the defense agree that that's correct. That if he was convicted of the two offenses of murder, that he would be sentenced to a term of natural life in prison. And that's exactly what he got. But the trial court found, I mean the trial court found that he was incorrectly advised by his attorney, but the trial court found that he had advised. And I believe that, I'm sorry, I didn't mean to interrupt. Oh, that's all right. I believe that the court was incorrect when it said that. Because what the court told the defendant was, you could be sentenced to a term of natural life in prison. And to the defendant, being told that you could be sentenced to something, and being told you absolutely will be sentenced to something, especially when it's a term of natural life, is make or break for the defendant. Is there anywhere in the record where this defendant was admonished that it was mandatory natural life if he was convicted of both murders? No. Everything was premised with it was a possibility, or he could have been sentenced to that. I thought the trial court said that since the defendant was advised he could be sentenced to natural life, he was aware of that possibility, and then strategically made a decision to go to the jury with first degree or nothing. Again, I think... Is that wrong? No, I believe that is correct. What's wrong with that? Well, what's wrong with that is the defendant, I think, in looking at the circumstances of what occurred here, and in tandem with the advice that he'd received from his attorney, that he was looking at 20 to 60 years concurrent sentences, that if he was convicted of both murders, given the facts of this case, that he would have been sentenced to the lower end of that, rather than natural life imprisonment. So your client's position is that his possible sentence, as he understood it, was only 20 to 60 years on murder? First degree murder? I'm trying to answer your... Let me know if this answers your question or not. Okay. What I believe Mr. Brown's position is, is that he did not think that natural life was mandatory. He believed that it was... Okay, my question is, is it his position that he was subject to 20 to 60 years only? I believe his position is that he believed that natural life imprisonment was also an option or a possibility. He did not know, however, that that was a mandatory sentence. And to him, that's what made the difference here. Okay, so then he did realize that he was subject to a natural life sentence. The court told him that it was a possibility. He did not know that that would be the mandatory sentence that he would receive. I understand that. But he knew it was a possibility. He knew it was a possibility, according to his attorney, that he could get 20 years. So not only has Mr. Brown alleged that his attorney improperly advised him regarding the sentencing range, but he's also alleged prejudice. And that prejudice is that had he known that he would have faced natural life imprisonment, he would have asked the court to instruct the jury or proffer an instruction for second degree murder, something that the court pretty clearly indicated it would have done. It believed that the evidence as presented by the trial record indicated that it would have been appropriate for the jury to have been advised of second degree murder. Had that instruction been given, the jury would have determined a question that it wasn't put into place to consider based on the decision based on his counsel's advice. But I thought he said that he didn't want it given because he thought it was confusing to the jury. That is what he says on the record. In his petition for post-conviction relief, he says that he made the decision not to give it because he didn't think that he would receive natural life imprisonment. He did not know that was a mandatory sentence. To clarify for me, what do you mean that's what he said on the record? I'm not supposed to consider that then? Are the trial courts not supposed to? Well, what I'm saying is that he's made the allegations in his petition for post-conviction relief. And during the first stage of proceedings, obviously where we are here, all those allegations are taken as true unless directly rebutted by the record. All right, I get this. But at the time the decision was made, did he say to the court, I think it's too confusing to the jury to submit second degree? Yes. And now his argument today is that had he known that if he was convicted of both, it was a natural life sentence, that it would not have been confusing to the jury. Is that right? So it's only confusing if natural life is a possibility, but it's not confusing if natural life is required. If I may back up just for a minute. As long as you come back to answering that. I'm going to try. I'm going to try. What he said when he told the court that he believed the instruction was too confusing, he said after consulting with counsel and based on the advice that I got from my attorney, I believe that it was too confusing. We don't know what that advice was other than what's in the petition for post-conviction relief. And that's essentially what his argument is. That yes, he did say that on the record here, but he's essentially provided extra detail in his petition for post-conviction relief on what about that claim may have been too confusing or what he thought may have been too confusing. Maybe he was confused by it. It certainly seems like he was, in part because of the incorrect advice that he got from his attorney. Does that answer your question? I was trying to get back to it. Okay. What I think was that how can it be confusing if natural life is a possibility versus natural life is required? How does that make it any less or more confusing to a jury based upon natural life required, natural life possibility? And I don't follow that. That I cannot answer because there is no more detail presented in the trial record on that. Well, it could be you can't answer because there's no answer to that. That makes any sense. Well, in looking at it from the defendant's perspective, he's kind of getting conflicting advice. The court has told him that natural life is a possibility, but then his attorney has told him that he could be sentenced from 20 to 60 years. And frankly, it wouldn't surprise me if the defendant was confused by all this advice that he's getting. And yes, the trial record isn't really clear on what he's meaning by he was worried that the jury might be too confused about it. He did explain that he was concerned because in order for the jury to find second-degree murder, they would first have to have convicted him of first-degree murder. And he said that he didn't want the jury, I don't remember if it's in the trial record or if it's in the petition for post-conviction relief, but he didn't want to give the jury another avenue to consider whether he was guilty of first-degree murder or not. So that could be what he's referring to as the confusion. But regardless of what he meant when he said that he was confused, I think in looking at the record, what the defendant is trying to say, at least in the petition for post-conviction relief, is hey, there's a big difference between me thinking I could get 20-year concurrent sentences, which is what my attorney told me was a possibility, and me getting a mandatory natural life imprisonment. And to him, that's what makes the difference here. What he is alleging in his petition for post-conviction relief, which is what we have pending here today, is an allegation that he would have submitted the second-degree murder instruction had he known that natural life imprisonment was the required penalty. He couldn't get anything less than that. I think the defense position is, at that point, why not do everything he can? Why not throw everything that could possibly get him a lesser sentence? It doesn't matter if it's confusing. Does it matter if it's confusing? It doesn't matter if it's confusing if we follow your line of reasoning and answer to Justice Turner's question. Who cares if the jury might be confused? There's a chance that instead of getting mandatory life, I'll get convicted of second-degree murder. Sure. Well, and again, he didn't realize that the natural life was a mandatory sentence. I understand that. And so he's looking at it now saying, well, had I known this, I would have offered them this instruction. I didn't want to offer this instruction to them when I thought I could get 20 or concurrent sentences. Now, that makes sense to me. I can't explain what the defendant meant when he told the trial court that he was worried the jury would be confused. The record isn't clear on that. But we do have it. It's almost like you're arguing against yourself. If I was going to go to trial and it was mandatory, I'd be happy to have the jury confused. I'd be happy to give them another instruction, even if it was the kind of instruction that would confuse them because it would be an option of being found guilty of a lesser offense. Well, and he'd already submitted the instruction for the justifiable use of force or self-defense to the jury. And again, I can't explain what he means by the confused language. What he did talk about, though, and again, I don't remember if it was in the post-conviction petition or if it was in the trial record, but the realization according to his attorney that in order to convict him of second-degree murder, they would have to first find him guilty of first-degree murder. And based on the trial record here, that seems to be what he's trying to avoid. He's trying to avoid planting any sort of seed in the jury's mind that, hey, please find me guilty of first-degree murder, maybe because we've got the justifiable use of force, the self-defense instruction that's being tendered to the jury, and based on these facts, I would argue, was plausible. You know, the jury actually came back with a question regarding... Well, maybe that's why the trial court concluded it was a matter of trial strategy, either not guilty or first degree. Well, and I would agree with the trial court, but for the fact that the defendant has a stake in the game here on what offenses he wants the jury to be instructed for. This isn't purely a question that is determined by his attorney. And where the attorney has essentially came to him and said, hey, what would you like me to do? And none of this is in the record, but just based on what is in the record, this is the way I kind of view the conversation. Well, what's the drawbacks to instructing them on this? Well, you could get 20 to 60 years concurrent if you're convicted of the murders. They would have to find first degree murder first. Your argument has some merit, a lot of merit. Let me ask you this. What if we send it back for a second stage? What happens then? Your client's going to continue to say, had I been advised correctly, I would have opted for the second degree instruction to be given. Is that the end of the case then, if he maintains that position at second stage? Is that dispositive? That's what I'm saying. Your client has said, this is what I would have done had I been advised properly. He wins. I don't believe so. What else, then, help me, in addition to that evidence, what else would be presented perhaps by the state, perhaps by the defendant? Right. Now, obviously, we're asking for it to be remanded to second stage, where he'd be appointed an attorney. The attorney has an opportunity to amend the post-conviction petition. And if it gets eventually to the third stage, then we can get defense counsel in and ask defense counsel, what did you tell him about this? Did you, in fact, tell him this? Did he say anything to you? For instance, your question regarding the defendant saying that he was confused. Maybe defense counsel can explain what he was confused about. Maybe the defendant can be called during a third stage hearing and explain, when I said I was confused in the trial court, this is what I meant. And he can explain maybe that was based on something that his attorney said. Maybe his attorney told him something else that wasn't completely accurate that is relevant to the proceedings. Okay. If it gets to the third stage, does your client's assertion on its own stand for him to be granted the petition? His assertion on the instructional issue. Obviously, there's more that comes into play with that, depending on what evidence is presented, depending on how his attorney amends the petition for post-conviction relief and what additional allegations are added. I mean, what we're faced with here is a pro se petition for post-conviction relief. He hasn't had the assistance of counsel yet. He's incarcerated. I don't know what the law library is like there. We have somebody with absolutely no legal training. And the simple thing that we're asking for today is that this court remand the case so it can go through this process that we're talking about. So it can be appointed an attorney who can look at the law and can look at what happened here. Maybe that attorney can talk to defense counsel and get defense counsel's point of view regarding what happened. And at that point, I think that's the only time I can answer your question in any comprehensible way because there's just too many variables at this point to know what's going to happen after this case will be remanded. And I think that's a very reasonable response. Okay. Thank you. Thank you. So had the instruction for second-degree murder been given, the jury would have been able to look at two mitigating factors and determine whether, by a propensity of the evidence, Mr. Brown had established either of those two factors, those two factors being whether he was acting under a sudden and intense passion resulting from serious provocation or whether he believed that the circumstances were such that he was justified in using force employed in self-defense but that his belief was unreasonable. And I'd like to talk about each of those just somewhat briefly because I think that the factual circumstances lend themselves in different ways to each of those two mitigating circumstances. With the first one, that being that the defendant was acting under a sudden and intense passion after serious provocation, by not tendering the second-degree murder instruction, the jury wasn't allowed to essentially stand in the shoes of the defendant as all this was happening on February 12, 2008. And I know this is the third time that this case has been in front of this court. I'd like to just briefly talk about the facts in order to illustrate what I mean by the jury being placed in the defendant's shoes. The defendant had gotten together with some friends and some family. They were playing video games when there was a knock at the door. It was Calvin Walls, who was the brother of the defendant's next-door neighbor. Calvin went to know if his brother, LeVar, was there, and the defendant answered no that he wasn't. But then Andrew Walker, the defendant's uncle, believed that he recognized Calvin. And they had a discussion, and that discussion fell into a verbal argument. And pretty soon that verbal argument turned into a physical argument, with Calvin rushing into the defendant's residence, closely followed by his brother, who was waiting on the stairs, David, behind him. David Walls also rushed into the residence. And essentially, they're committing a home invasion here. They're coming in, they're uninvited, and they start essentially having a physical altercation with Andrew Walker and Montel Jones. Now, we don't know, based on this record, what the size disparity was between Calvin Walls and Andrew Walker. But we do know that David Walls was approximately 100 pounds heavier than Montel Jones was. And at one point, Andrew Walker testifies that he looks over and sees David having Montel by the neck, and at another point slinging him around. And slinging is his own word in the record. Mr. Burns is watching all of this. He's seeing his family being attacked in his residence by two men who the record doesn't clearly indicate he knows very well. He may be acquaintances with them. But rather than going and getting the gun that we know he has, he goes over and assists Andrew and pulls Calvin off. And they force Calvin out of the apartment. They lock the door. They brace themselves against the door. Calvin kicks the door in. Calvin comes in, and that's when the defendant gets his gun and begins shooting. I believe there were 14 shell casings found at the scene. There were bullets in the ceiling, in the floor, in the couch, in the stereo, and in Montel Jones, the defendant's own cousin. This is not a deliberate, well-thought-out shooting with malice. This is an impassioned event where this defendant is just trying to end this conflict that he tried ending somewhat peacefully by forcing Calvin out of the residence. But the Walls came back in and continued assaulting his family. The jury was never given the option of placing themselves in their shoes and being forced to consider what they would have felt at the time that the defendant is watching his family members being beaten. And had they done that, I think there's a reasonable probability that the jury would have concluded that the defendant was acting under a sudden intense passion after serious provocation, which I think this clearly was. And so I think that part of the mitigation, or I think the defendant has brought the gist of a constitutional claim, at least is that part of the mitigating factors of second-degree murder that shows that maybe he would have been convicted. Maybe the jury would have believed that. Additionally, moving on to the second factor, which is the justifiable use of force, but his belief was unreasonable. When he shoots the Wall, Calvin and David Walls eventually, again, he's just seeing these two men that have a combined weight of 500 pounds beating his residents. He encounters them outside of his residence. And I think the jury, viewing this testimony, viewing this situation, the scuffle that the defendant testifies happened, would believe that the defendant was believed at the time that he was right in firing his gun and trying to end this scuffle, but that his belief was unjustified because after all, the Walls were not armed themselves. And so I think the jury placing themselves in his position could have found him guilty of second-degree murder. I see my time has expired. If there are no more questions. Thank you. Mr. Johnson. May it please the Court. Counsel. I would like to respond to a few of the questions that were asked here. In regards to the timing of the advice that the defendant received, what we know from the record that we have in front of us is that a letter was sent following his conviction but prior to his sentence. And in that letter, counsel did indicate that he did not see a mandated natural life sentence as required. He said that because these murders had been simultaneous, that the court would not be able to find that there had been a prior murder such that a mandatory natural life sentence would occur. But that is evidence as to what was given after the conviction and before sentencing. We don't know, and defendant's petition does allege that had he known he would have been facing mandatory, he would have asked for second degree, but it does not specify when he did become aware of that information at a time other than what we know from the letter. He does not say in his petition that this information was shared with him prior to making the decision not to submit second-degree instructions. I'll ask you the same question I ask counsel. Is there anywhere in the record that shows that he was correctly admonished, that if he was convicted of these two murders, he would face natural life in prison mandatorily? There is nothing in the record that indicates he would face it mandatorily. This was not a guilty plea, so there were not the rules on admonitions that are in effect at that time. This was a sentence range admonishment that was given at the arraignment. And at that time, the death penalty was even still on the possible sentences that he could receive. So the trial court, after going through the charges, was setting forth all the different possible sentences that he could receive. Now, at an arraignment, the trial court doesn't know he will definitely be found guilty of two, and therefore he will be sentenced to natural life. The trial court phrased it that it was possible he could receive the death penalty, and therefore he would face natural life. He could receive 20 to 60. He couldn't receive 20 to 60. That's the error. He could, respectfully, if he was only convicted of one of the murders. Right. But if he was convicted of both, 20 to 60 was off the table. Correct. And in providing the possible penalties, it wasn't if you're convicted of both murders and the aggravated battery, this is what you'll face. But if you're only convicted of one murder and no aggravated battery, this is what you'll face. The court was not going through the litany of multiple conviction possibilities that existed. The court was stating at an arraignment the possible sentences that were out there. And no, it did not at any time say that it would be mandatory if he was found guilty of two murders. It's not in the record. That's not what was provided. Let me ask you this, Ms. Jensen. If this case was sent back for a second stage hearing and it gets to a third stage evidentiary hearing, if defense counsel testifies that he was under a misunderstanding, he did not realize his client was facing a mandatory life sentence if he was convicted of both murders, what would happen if that's the testimony? Well, the allegation in the petition is ineffective assistance of counsel. And so it's not just going to be enough, even if we should all agree it's not reasonable for counsel not to know the maximum sentence that his client is facing. But he still has to establish prejudice. And on the record that we have, that's not going to be possible to establish prejudice. Why is that? Because if he was convicted of second degree murder, he could have gotten a term of years rather than life. Correct. But as you have, as has been bandied about here today, the basis for declining the second degree instruction on the record we have is not that it was because of this advice that we don't know when he received. It was because he thought it would be too confusing. And what I would submit as my understanding of what was meant by too confusing is this. The majority of the argument today, the majority of the argument in the brief has been that a second degree sudden and intense passion defense would have been viable for the jury to find. But hopefully his defense attorney knew, as the Illinois courts have ruled, that a first degree, a self-defense justification defense, which is what defendant presented before the jury at trial, is completely inconsistent and it negates a sudden and intense passion defense. I thought the law was if you're given a self-defense instruction, then it's correct. And the court could have given the instruction. But I'm trying to explain what I think the defendant meant by would have been too confusing for the jury. And that's the recognition that sudden and intense means it was an unplanned, provoked response versus justification, which is in his statement to the jury that Boldly said. Counsel, we're just really saying that if he got second degree, that basically eliminates the self-defense theory. I don't believe it eliminates. I believe it puts before the jury their requirement to resolve. It puts an inconsistent argument for the defendant to make to the jury in order to succeed on self-defense if you put second degree instructions in. Correct, which is why he made the deliberate decision. It was too confusing to ask the jury to do that. And he was rolling the dice with an all or nothing on first degree, hoping that they would not find it. What about the second prong of that, his belief was unreasonable? He thought he needed to use it, but that's not inconsistent with self-defense. If you go back on a second or a third, though, he still will not be able to show that he was prejudiced under that prong, under that prong. To believe under the second prong that it was an unreasonable belief that the killing was required is to require a belief that death or injury was imminent. And on the facts that we have here, he could not have believed that there was death or harm imminent to any of the occupants of his apartment, because at the time he shot the Walls brothers, they were gone. They had, when he started shooting inside the apartment, he shot his own friend three times. The testimony was when his friend Montel got shot, Andrew Walker, Eric Foster and Montel took him out of the apartment to seek help for his gunshot wounds. The testimony also, so the point being on them, he could not have thought imminent harm or death was coming to them. They were gone. He could not have believed that imminent death or harm was coming to himself because in addition to them being gone, the Walls brothers were gone. LaVar was back to his apartment. Calvin and David were not only not on the second floor where the apartment was located, but was on the first floor and moving toward the exit of the entire building. At this point, he takes that gun and he pursues them. Now, prior to the pursuit, he is standing in his apartment, an empty apartment, the fighting has ended, whatever fighting took place beforehand, whoever was responsible. It's over. Everybody has abandoned this. He's standing armed with a gun and nobody's around. What imminent threat of death or harm is there to him? So he can't establish prejudice even under the second prong of an ineffective assistance claim. This argument about the strategy. You know, if he's asked by the court, do you understand? And he said, well, I think it's going to be too confusing to the jury. If he's never been apprised of the mandatory life sentence that's going to be imposed if he's convicted of both murders, how would he even know to talk about that? And say, I want to roll the dice, I want to go for all or nothing. He was apprised of the possibility of it. Even not having the word mandatory used at the arraignment when he was apprised of the sentencing. He was told of the possibility of it and he was told in regards to the discharge of the weapon as well as for the actual murders. But he was also told of the possibility of 20 to 60. Correct. And if he's convicted of both, that's not a possibility. It is not a possibility. And again, when the court gave the instruction or the admonishments on it, it was of all the possibilities of all the charges that were currently pending. But given that he was clearly advised of the possibility, that should have been in his thought processes when determining whether to give those second degree instructions. It's not like he had never been told it was a possibility. So just as he was never told it was mandatory that he would receive them if convicted of both, he certainly was not told that it was guaranteed to get 20 to 60 either. 20 to 60 was a possibility. Natural life was a possibility. Knowing it was a possibility, it's unreasonable to think it was not in his consciousness when he was deciding what risk do I take with the jury in going for all or nothing with first degree murder. Don't you think it was just a misunderstanding on the judge's part, the defense counsel's part about what the sentence would be if he was convicted? I personally don't believe that. I believe it was a misunderstanding on the part of his counsel. I don't think there's any question as to that. But the trial court was not wrong in advising as he did. The trial court did not have to go through the multiple combinations of convictions that he could face. What about the Curry admonishments right before trial? I'm sorry, I didn't hear. Don't judges usually give the Curry admonishments right before trial where they tell the defendant, okay, we're ready to go to trial. Do you understand if you're convicted on both of these counts of murder, you're facing natural life in prison? Yes, and there was not a re-admonishment prior to the trial here. Yes, I recognize that. But he still can't get over this, whatever those errors were, however inartful the trial court was in not going through mandatory sentences depending on which convictions would come through. He cannot overcome this prejudice element to establish ineffective assistance, which is what he needs to get through the post-conviction petition. Well, wouldn't it be reasonable for this court to say, argue that at the third stage hearing after he's appointed counsel at the second stage hearing? Certainly, but it's also relevant for here because he has to establish the gist of an ineffective assistance. And that includes the prejudice, which is why we get to argue that point here. And the record clearly rebuts many of the arguments that he makes to support a prejudice argument. If the court has no other questions? Justice Connacht, you don't? I'm just thinking, how can you even get to trial strategy if the defense lawyer doesn't know what the law is? I admit I don't believe that it was reasonable to not know what the client was facing. But you do still, under the law we have, the case law, you still have to get past that prejudice. Whatever his errors were, were not sufficient on their own to get him an ineffective assistance counsel. Well, but that's because you believe that he really can't prevail on second-degree murder. The facts of this case support that belief.  If he did get a second-degree murder, then he would be exonerated on the defense he did use. Correct. Correct. That's more likely. Thanks, Mr. Johnson. Thank you. Mr. Wilson, any rebuttal? Can I ask you a question before we get started? Sure. And I don't mean to embarrass you at all, but this case started out as a Finley. Yes. And now we're hearing oral arguments on this kind of a major issue. Yes. So tell me how that happened. Well, when the court issued its order denying Osak's Finley, it gives an opportunity to reexamine the case through this court's perspective. And initially, I believe, when the attorney looked at the case, they believed that the admonishments given by the trial court regarding what the possible penalty could be, that being that the defendant could receive natural life imprisonment, satisfied any issue of whether the defendant successfully pled the gist of a constitutional claim. But once this court issued its order denying the Finley claim, I was assigned to the case and went back and reexamined the record and agreed with this court that the trial court's admonition of what the defendant could have received in the way of a sentence was not sufficient because it did not tell him that a natural life sentence was required if he was convicted. Did we decide that issue, or did we just direct you to brief the issue? You directed us to brief the issue, but in denying the Finley motion, you certainly indicated that you thought there was a question there. And that's what led me to go back and reexamine the issue. I just want to touch briefly on pulling back and thinking about the reason why we're here today. We're here because the defendant has filed a first-stage petition for post-conviction relief, a pro se defendant. He has no legal training. And the only thing that he is asking today, he's not asking this court to reverse his conviction, he's not asking for a new trial, he's simply asking this court to remand the case so that it can go through the procedure set forth by the Post-Conviction Hearing Act. Allow him to be appointed an attorney. If the attorney amends the petition and the state files a motion to dismiss, we can have any of the same arguments that we've been having here today. But what we're not here today to debate is what we think the defendant meant when he said something on the record, or what we think his motivation may have been, because that's not present here. What we have here is the defendant's claims in his petition for post-conviction relief, that had he known that he was subject to a term of natural life imprisonment, he would have asked the court to instruct the jury on second-degree murder. Now, in looking at the standards for dismissing a claim of, a first-stage claim of ineffective assistance of counsel, or any first-stage claim in the Post-Conviction Hearing Act process, the courts have talked about allegations being frivolous or patently without merit, or fanciful allegations. In its purest form, I don't think there's anything fanciful about the defendant saying, I was improperly admonished by my attorney here, and had I been properly admonished, I would have asked the court to give a second-degree murder instruction. I don't think there's anything fanciful about the defendant saying, I think had I asked the court for the second-degree murder instruction, the court would have given it. And I can say that with some confidence that that's not fanciful, because the court said as much. They said that based on what had occurred at trial, a second-degree murder instruction was clearly appropriate. I don't think there's anything fanciful about saying that had the jury been so instructed regarding second-degree murder, that there wasn't a reasonable probability that it couldn't find, by preponderance of the evidence, one of the mitigating factors set forth in that instruction, as we've been discussing today. These things aren't fanciful. They're completely believable based on the record that we have here. And this is exactly the sort of claim that the Post-Conviction Hearing Act has been established for, so that it can be sent back, so it can go to that second stage. So somebody with legal training can look at his claims and shape those claims. And if the state wants to file a motion to dismiss during second-stage proceedings, it's certainly welcome to do so. And as I said, many of the same arguments, I'm sure, will be made there. But there's a potential that this even gets to an evidentiary hearing. And it's at that point that we can find out what counsel meant when he told the defendant, you're subject to 20 to 60 years. When he told the defendant that. I would submit that if the attorney sends the letter, sends the client a letter after he's been convicted saying, you could receive 20 to 60 years, that's not knowledge that all of a sudden just comes to that attorney. The attorney's probably thought that all the way along. And it seems fairly clear, at least in the petition for post-conviction relief, that the defendant believed that that was what he could have received, a sentence of 20 to 60 years. I went back and looked at the petition. And counsel even goes on to say, however, trial counsel never informed the defendant that a natural life sentence of imprisonment was mandated if he was found guilty of both charges. So we have a claim here. We have a petition that's posed the gist of a constitutional claim. And Michael Brown would simply ask that this court would man this petition for second stage proceedings. Thank you, counsel. We'll take this matter under advisement and be in recess. Thank you.